SAMUEL, Judge.
Plaintiff filed this suit against his employer, Trapmar, Inc., and its workmen’s compensation carrier, American Employers *736 Insurance Company,[1] for total and permanent benefits and penalties and attorney’s fees. The claim is based upon a heart attack allegedly occurring within the course and scope of plaintiff’s employment.
Following trial, judgment was rendered in favor of plaintiff and against both defendants for weekly benefits [2] based on permanent disability during the period he remains disabled, 12% penalties on all past due installments, and attorney’s fees of $6,000.
It is appellants’ position that plaintiff did not sustain a heart attack as a result of his employment.
In support of his claim, plaintiff introduced the testimony of the following lay witnesses: William Jackson, who operates a restaurant in the building where plaintiff is employed, Sam Gros and Beverly King, fellow workers, and Reverend Mother Mamie Edwards and Sam Henry, her son, who were visiting at his home when plaintiff suffered a heart attack.
Defendants called two lay witnesses, A. J. Delaune, a construction superintendent who was plaintiff’s boss, and Virgil Russell, an insurance adjuster.
Concerning the accident, plaintiff testified: On July 19, 1978 he reported to work and started to cut down a wall. He had shortness of breath and chest pains which got progressively worse. After lunch they cleaned up the “mess” from the wall. He wasn’t able to do much, but remained on the job the entire day. He told Mr. De-laune, his boss, but did not ask to be sent to a doctor because Delaune wouldn’t have sent him and he was unable to pay for a doctor himself. One time previously De-laune had recommended he see a veterinarian. Plaintiff also told Beverly King, a fellow worker who gives him a ride to and from work, about the chest pains on the way home.
After plaintiff showered and changed clothes at home Reverend Edwards and her son came to call. He spoke with them briefly and went to the kitchen for water, where he blacked out. When he regained consciousness they helped him to bed, and that night or the next day he was admitted to Flint Goodrich Hospital.
Delaune visited him on one occasion in the hospital, bringing his pay check. After his discharge he returned to Trapmar to tell them he was unable to work. Although Trapmar’s hospitalization insurer has paid his medical bills, plaintiff has never received any compensation from Trapmar or its compensation insurer.
Jackson testified plaintiff regularly ate lunch in his restaurant and he had seen him daily over a period of years. About IV2 to 2 weeks before the incident, plaintiff complained of chest pains and shortness of breath. He recommended plaintiff see a doctor.
Gros testified he worked with plaintiff on a daily basis and a few days before the incident plaintiff complained of shortness of breath and chest pains. King testified similarly and also stated on the way home that day plaintiff complained.
Generally, Reverend Edwards and her son confirmed plaintiff’s version of what happened at his home during the visit. She left about midnight and the son claims to have stayed all night, although plaintiff is confused as to whether they went to the hospital that night or the next morning.[3]
Defendants’ lay witnesses testified as follows: Delaune does not remember plaintiff complaining of chest or heart pains on July 19, but admits plaintiff had been complaining of chest pains for a long time. He would have sent plaintiff to a doctor had he requested it. Plaintiff had complained within 3 or 4 weeks of his attack. This witness did recall jokingly recommending a veterinarian to plaintiff several years ago. He described plaintiff’s duties, explaining *737 plaintiff was not expected to lift heavy things without assistance and the heaviest thing he would have to lift would be a door, which would weigh about 125 pounds, but he was never asked to pick it up himself.
Russell testified he had questioned plaintiff’s witness, Beverly King, shortly after the claim and King had denied plaintiff ever complained to him of feeling sick or of chest pains. (King had been excused earlier as a witness and was not available for rebuttal.)
Medical evidence was given by Dr. Joseph Allain, the treating physician, Dr. John Phillips, a specialist in internal medicine with a subspecialty in cardiovascular diseases, and Dr. Roger Dhuranadhar, a cardiologist, who testified on behalf of defendants.
Dr. Allain testified: He treated plaintiff on July 20, 1978 for shortness of breath of three weeks’ duration. Examination revealed plaintiff was in serious congestive heart failure. He had fluid in his lungs and atrial fibrillation. He was admitted to the hospital at that time and discharged on August 7, 1978. Plaintiff is still under his care. The doctor felt plaintiff should not return to work as a laborer. Allain stated the heart failure was secondary to hypertension and arteriosclerosis and usually occurs over an extended period of time. In plaintiff’s case, because of a history of shortness of breath the doctor concluded it had occurred over a period of weeks. He was of the opinion that the type of work performed by plaintiff contributed to his heart failure.
Dr. Phillips testified: He examined plaintiff on May 17,1979, after he had reviewed the hospital records and had taken a history. He diagnosed plaintiff’s condition as hypertensive cardiovascular disease with left ventricular hypertrophy with previous episodes of congestive heart failure and atrial fibrillation, angina pectoris (shortness of breath) chronic obstructive pulmonary disease with bronchial asthma, probably mild diabetes mellitus, previous hyperurice-mia, and neuropsychiatric disorder with chronic anxiety and hyperventilation. Dr. Phillips concluded physical exertion with underlying heart disease, hypertension and hypertensive cardiovascular disease and congestive heart failure would be deleterious to plaintiff’s health. He felt the congestive heart failure and angina pectoris were not caused by work-related activity but, with uncontrolled hypertension, plaintiff’s work-related activity would aggravate the underlying disease and lead to congestive heart failure and angina. He stated the activities of plaintiff’s job were a significant factor in his attack, and that plaintiff could not perform heavy laboring duties, but could be, for example, a ticket taker, dispatcher, or an elevator operator.
Dr. Dhurandhar testified: He first saw plaintiff in April, 1979, took a history and performed a complete physical examination. His findings were restricted to the heart. He found clinical evidence of slight left ventricular hypertrophy, and a soft third heart sound near the apex. Otherwise, the examination was unremarkable. He reviewed. the hospital records prior to the examination. An electrocardiogram taken at this time showed no prior evidence of a heart attack. This doctor stated he found no evidence of a heart attack in 1978 and that plaintiff probably had a rhythm disturbance with rapid heart rate exceeding ISO-MO beats per minute, which precipitated an attack of heart failure and necessitated hospital admission which was appropriately treated, causing plaintiff to make a good recovery. He was of the opinion plaintiff’s congestive heart failure was not work related, but was caused by inadequately treated high blood pressure associated with disturbances of heart failure. He felt plaintiff is not capable of performing heavy duties but can do light physical work, possibly as a security guard.
In its reasons for judgment, relying on Dr. Allain’s testimony, the court found the precipitating cause of the congestive heart failure was the laborious work plaintiff was doing on the day or days immediately prior thereto. From our examination of all of the medical evidence, we cannot say that finding is manifestly erroneous.
*738 Concerning penalties and attorney’s fees, appellants contend they had no knowledge of plaintiff’s claim until suit was filed on December 12, 1978, and at plaintiff’s deposition on February 2, 1979 it was admitted by him that no medical reports had ever been furnished to his employer or its insurance carrier up to that time. The trial judge found that at least partial payments should have been made to plaintiff because from the date of the incident until Dr. Dhurandhar’s examination and report on April, 1979 the entire medical evidence was that plaintiff had a job connected disability and was unable to work.
The record does support the fact that he was visited in the hospital by his superior, so the employer did have knowledge of his illness almost from its inception, and plaintiff had complained to him of chest pains and shortness of breath. Accordingly, we conclude the trial judge properly awarded penalties and attorney’s fees.
Appellants alternatively contend the attorney’s fees awarded are excessive. We agree it is generous, but we do not feel the trial judge abused his “much discretion”. Thus, we will not disturb either award.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Incorrectly named Travelers Insurance Company in the original petition.

. The correctness of the amount is stipulated at $129.82 per week.

.The hospital records indicated plaintiff was admitted the next morning.